UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| East Penn Children's Learning Academy, LLC, | : | Case No.  20-14646 (PMM) |
| | : | |
| Debtor. | : | |

# O P I N I O N

## I.  INTRODUCTION

East Penn Children's Learning Academy, LLC ("EPCLA" or the "Debtor"), a day care business which seeks to reorganize under chapter 11, subchapter v, owes its landlord, Robshe Enterprises, LLC ("Robshe") both pre and post-petition unpaid rent. The Debtor surrendered the property it leased from Robshe and moved to a different location in June 2021, about six (6) months after the bankruptcy filing.

The Debtor's Objection to Robshe's Proof of Claim Number 3 (the "Proof of Claim"), one of three (3) proofs of claim filed by the landlord, presents the question of whether 11 U.S.C. § 502(b)(6) (commonly, and here, referred to as the "Rent Cap") succeeds either in altering or dictating the amount of damages to which Robshe is entitled.

The Debtor argues that the Rent Cap does not change the allowed amount because the damages due under the lease agreement and applicable state court law are lower than the amount that would be provided (or limited) by the Rent Cap.  Robshe, to the contrary, asserts that application of the Rent Cap dictates a higher amount of damages.

I agree with the Debtor.

The Rent Cap does not affect the amount of damages here because the lease between the parties lacks an acceleration clause and the underlying state court damages owed pursuant to the lease are lower than the Rent Cap calculation.

Consequently, the Debtor's Claim Objection will be sustained and, as detailed below, the Proof of Claim will be reduced and allowed as an unsecured claim.

## II. FACTUAL BACKGROUND

EPCLA is a day care center and limited liability company owned by Kristen Funk ("Ms. Funk"), who purchased the Debtor in 2017. That same year, on August 28, 2017, Ms. Funk entered into a lease agreement (the "Lease") with Robshe to rent space located at 49 W. Penn Avenue in Alburtis, PA (the "Property").

The Lease commenced on September 1, 2017 and was to terminate on August 31, 2022. The Lease provides for a tiered payment structure, according to which the rent would rise $100.00 the first of September every year (beginning at $2,600.00 per month and rising to $2,900.00 per month as of September 1, 2021). Lease, doc. # 49 at Ex. 1 at Section Three. The rent is subject to a 10% late charge if not paid by the 5th of the month. In addition, rent that was not paid after thirty (30) days would be assessed an additional penalty of 5% per month. Section twelve (12) of the Lease provides that, upon default of the tenant, the landlord may "bring suit for . . . rent due [and] declare the rights of the [tenant] under the lease terminated, and . . . recover possession of [the] premises through legal process." Lease at 2, §12.

## III. PROCEDURAL HISTORY

The Debtor filed for chapter 11, subchapter v, bankruptcy protection on December 4, 2020. The Debtor has no secured creditors; Robshe is its main (unsecured) creditor.

Just prior to the bankruptcy filing, on November 6, 2020, Robshe obtained a judgment (the "Judgment") in the amount of $40,100.00 plus 6% interest against the Debtor in state court

in Lehigh County.[1] See Statement of Financial Affairs. The Judgment included unpaid rent through March, 2020.

On March 10, 2021, Robshe filed a Motion to Compel Assumption or Rejection of Unexpired Lease and for Post-Petition Lease Payments, seeking to force the Debtor to accept or reject the Lease and to compel the Debtor to pay post-petition rent in the amount of $12,040.00. (doc. #49, the "Motion to Compel").  On April 27, 2021, the Motion to Compel was granted, allowing an administrative claim for postpetition rent from January 2021 through April 2021 in the amount of $12,320.00 (including interest, as prescribed by the Lease) (doc. #69, the "Administrative Claim Order").  The Administrative Claim Order further provided that the Debtor must vacate the Property by the end of May, 2021.  Doc. #69 at 1.  This departure deadline was later extended to June 30, 2021.  Doc. # 90.  The Debtor did leave the premises by this date.

The Debtor, in turn, filed a Motion to Approve a New Lease (with Russell Afflerbach) and to Reject the Lease with Robshe. (doc. # 53, the "Motion to Approve").  The Debtor considered the Motion to Approve to be a rejection of the Lease. See doc. # 61.  The Order granting the Motion to Approve, also entered on April 27, 2021, approved the rejection of the Lease by the Debtor. Doc. # 68.

On May 25, 2021, Robshe was granted a separate administrative expense for "stub rent" in the amount of $2,438.71 for the prorated, post-petition rent due from December 4, 2020 to December 31, 2020.  Doc. # 89 (the "Stub Rent Order").

Robshe, seeking to make itself whole, filed three (3) of the four (4) proofs of claim in this bankruptcy:

---

[1] Apparently, prior to Robshe's lawsuit, the Debtor sued Robshe in state court. See doc. # 53 at 1 (details of the Debtor's suit not provided).

- Claim No. 2 in the amount of $12,320.00, which is a priority administrative claim for rent due from January 2021 through April 2021, see footnote 10, supra;

- Claim No.3 (the Proof of Claim at issue), which was filed on May 7, 2021 and amended twice (on May 26, 2021 and on July 19, 2021). The second amended claim seeks a priority claim in the amount $77,725.86 for damages due to the prepetition unpaid rent and rejection of Lease, broken down as follows:

    - $43,725.86 for unpaid prepetition rent;[2] and

    - $34,000.00 for the rejection of the Lease pursuant to §502(b)(6) (the Rent Cap).

- Claim No. 4, an unsecured priority claim in the amount of $2,438.71 for December 2020 for "stub rent." This amount was allowed by the Stub Rent Order.

The Debtor only objects to Claim Number 3, contesting the following charges:[3]

- $2,970.00 for August 2020 rent and late fee. Because the revised Proof of Claim removed this charge, this amount is no longer at issue;

- Rent charged for September and October 2020. However, the amended Claim revises these dates to reflect the dates of September -December, 2021. See Claim 3-3, Part 2; and

---

[2]   This figure represents the amount of the Judgment plus the rent for November 2020 and the portion of the December 2020 rent that is not included in the Stub Rent Order.

The fact that pre-petition rent from April 2020 through October 2020 is not sought by Robshe indicates that the Debtor has satisfied its rent obligation for this time period (though the papers do not make this clear). Therefore, I will not consider any rent owed for this period.

[3]   The Debtor's Objection was filed after the first amendment to Claim No. 3 but before the second amendment to the Claim.

- Rent charged after June 2021. The Debtor asserts that it paid rent for May and June, 2021 and vacated the Property in June 2021, thus eliminating any further obligation to pay rent.

Due to the revision of the Proof of Claim, only the final point remains at issue. See Debtor's Br. at 7 (conceding both that the amount owed for prepetition rent as stated in the Proof of Claim is accurate and that the Debtor is liable for rent from January to April 2021). The dispute thus boils down to whether Robshe is entitled to rent owed from May through December 2021. The parties are fighting over a sum of about $23,000.00.

Following denial of its chapter 11 Plan, doc. # 97, the Debtor filed the Objection, to which Robshe responded, doc. # 103. After a hearing on the Objection, held and concluded on August 10, 2021, the parties each filed a Memorandum. See doc. #'s 111 and 116. The matter is now ripe for adjudication.

## IV.  THE PARTIES' ARGUMENTS

The Debtor asserts that Robshe's claim must be limited to the amount due pre-petition ($43,725.86, which includes the Judgment) and postpetition rent from January to April 2021 in the total amount of $11,200.00. The Debtor argues that any further award of post-petition rent is unwarranted because the Lease does not contain an acceleration clause, which would allow Robshe to make a claim for rent from July through December 2021. According to the Debtor, there is "no need" for a rent cap analysis under § 502(b)(6). Br. at 7.

Robshe counters that the purpose of the Rent Cap provided for in Code § 502(b)(6) is to compensate a landlord for the loss of rental income when its bankrupt tenant rejects a lease. Neither the Code nor Pennsylvania law sets forth a requirement that the relevant lease include an

5

acceleration clause in order for this provision to apply. Rather, the statutory Rent Cap formula allows a total claim for reserved rent for one year from the petition date.

### V. STANDARD FOR DETERMINING OBJECTION TO PROOF OF CLAIM

The Bankruptcy Code and Rules provide that a properly filed proof of claim is *prima facie* valid and, absent objection by a party in interest, is allowed. 11 U.S.C. § 502(a); F.R.B.P. 3001(f). The claimant's initial burden of proof is satisfied by the filing of such a claim. In re Chew, 627 B.R. 112, 114 (Bankr. E.D. Pa. 2021) (citing In re Allegheny Int'l, Inc., 954 F.2d 167, 173–74 (3d Cir. 1992)). The burden then shifts to the objector to show that, despite being *prima facie* valid, the claim is legally insufficient. In re Henry, 546 B.R. 633, 634–35 (Bankr. E.D. Pa. 2016). If the objector "presents such 'bubble-bursting evidence, then both parties may present further evidence." In re George, 606 B.R. 236, 239 (Bankr. E.D. Pa. 2019) (citation omitted). The ultimate burden remains with the creditor. In re Revelle, 2021 WL 3669358, at *2 (Bankr. D. Del. Aug. 18, 2021).[4]

Ordinarily, it is the Debtor who seeks to impose a Rent Cap limit on a proof of claim and who, therefore, maintains the burden of proof as to whether this provision applies. In re Dronebarger, 2011 WL 350479, at *6 (Bankr. W.D. Tex. Jan. 31, 2011). Here, we have an unusual scenario in which the landlord, whose lease has been terminated by the Debtor, argues that the Rent Cap allows it to receive *more* than it would absent such provision. Under these circumstances, the shifting burden of proof applies and means that, because the Debtor has called into question the legal premise on which Robshe relies, the creditor bears the final burden with

---

[4] One could argue, though the Debtor has not, that the Proof of Claim is insufficient because the Lease – the writing on which the Claim is based – is not attached. See F.R.B.P. 3001(c)(1). However, failure to comply with Rule 3001 does not necessarily mean that a claim should be disallowed. In re O'Brien, 440 B.R. 654, 666 (Bankr. E.D. Pa. 2010) (citing cases).

regard to its determination of the amount of the proof of claim.  See 4 Collier on Bankruptcy ¶ 502.03[7][d] (16th Ed. 2021) (explaining that it is the landlord's burden to demonstrate damages resulting from termination; such claim is then limited by the rent cap provision).

## VI. ANALYSIS

### A. The Rent Cap Provision

Determination of this matter rests on an understanding of the less than clear Rent Cap provision outlined in 11 U.S.C. §502(b)(6).  The purpose of the Rent Cap is to allow a landlord reasonable damages for the loss of rent due while preventing the landlord from stating a claim so large that other unsecured creditors are left uncompensated.  See In re Kupfer, 852 F.3d 853, 856 (9th Cir. 2016); In re Ancona, 2016 WL 828099, at *5 (Bankr. S.D.N.Y. Mar. 2, 2016) (citing H.R.Rep. No. 595, 95th Cong., 2d Sess. 63 (1978)); In re PPI Enterprises, Inc., 324 F.3d 197, 207 (3d Cir. 2003) (the Rent Cap reflects Congress' intent to prevent landlords from receiving a windfall over other creditors).

The Rent Cap effectively limits the claim of a landlord whose lease has been terminated. Such a claim will be reduced to the extent that the amount exceeds:

> **(A)** the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of--
>
>> **(i)** the date of the filing of the petition; and
>>
>> **(ii)** the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
>
> **(B)** any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

11 U.S.C.A. § 502(b)(6).

The amount of damages, which must be independently determined, is then reduced to the limitation set by the Rent Cap.  Section 502(b)(6) sets forth a formula to determine a maximum

7

amount of pre and post-petition rent owed. In re MDC Sys., Inc., 488 B.R. 74, 82 (Bankr. E.D. Pa. 2013).

**Step One: Calculation of the Damages Under the Lease and State Law**

This formula points to the need for an initial determination of the landlord's damages prior to consideration of the Rent Cap.

**1. Rent Cap is a limiting principle, not a formula for calculating damages**

To start, we must take into account the well-established principle that the Rent Cap seeks to *limit* rather than *determine* the amount of a creditor's claim. E.g. Ancona, 2016 WL 828099, at *10

As Judge Frank of this Court explained:

> Section 502(b)(6) does not impact the amount of the landlord's claim; it determines only the *allowed* amount of the claim. The claim, **independent of the allowance process under § 502(b)(6), must be determined first** under applicable non-bankruptcy law and then compared with and, **if necessary**, reduced to the statutory maximum provided in § 502(b)(6).

MDC Sys., Inc., 488 B.R. at 82 (emphasis added). See also In re Smith, 249 B.R. 328, 334 (Bankr. S.D. Ga. 2000) ("A landlord's claim for damages is determined by state law and the terms of the lease, and then limited by § 502(b)(6)").

The preliminary determination is the amount of Robshe's claim pursuant to the Lease and state law. In re Peters, 2004 WL 1291125, at *2 (Bankr. E.D. Pa. May 7, 2004).

How much would Robshe be entitled to without the application of the Rent Cap?

**2. Absence of an Acceleration Clause in the Lease**

Another important preliminary consideration is that the Lease entered by the parties did not contain a clause allowing for the acceleration of rent.

8

A rent acceleration clause benefits a landlord by providing that, upon a tenant's breach, all rent and expenses owed through the lease expiration are due at once (rather than accruing according to the due dates provided in the lease). An acceleration clause is permitted in Pennsylvania as a "valid expansion of a lessor's remedy." Kingsly Compression, Inc. v. Mountain V Oil & Gas, Inc., 2010 WL 4929076, at *4 (W.D. Pa. Nov. 30, 2010) citing American Multi–Cinema, Inc. v. Posel Enters., 1992 WL 328891, at *9 (E.D.Pa. October 27, 1992) (citing Pierce v. Hoffstot, 211 Pa.Super. 380, 236 A.2d 828 (Pa.Super.1967)); Restatement (Second) of Property Landlord & Tenant § 12.1 cmt. k (1977). Such a provision insures that a landlord will receive all moneys due under the lease without "having to harass a reluctant tenant as periodical payments become due." Pierce, 211 Pa. Super. at 384.[5]

If a lease does not contain an acceleration clause, a landlord "may recover future rents on the property **only as they become due**." Onal v. BP Amoco Corp., 275 F. Supp. 2d 650, 668 (E.D. Pa. 2003), aff'd sub nom. Onal v. PB Amoco Corp., 134 Fed. Appx. 515 (3d Cir. 2005) (emphasis added); see also Hirsh v. Carbon Lehigh Intermediate Unit #21, 65 Pa. D. & C. 4th 390, 412 (Com. Pl. 2003) (tenant's obligations under a lease terminate upon surrender).

A landlord who fails to include an acceleration clause in a lease agreement must, in order to collect unpaid, accruing rent, seek redress in state court as the amounts come due (i.e. on an ongoing basis); the landlord cannot claim accelerated, or expected, payments.

---

[5] The Debtor is correct that under Pennsylvania law, "a landlord must elect *between* repossession and actual damages *or* acceleration of the balance due." See Finkle v. Gulf & W. Mfg. Co., 744 F.2d 1015, 1021 (3d Cir. 1984) (emphasis in original). Possession likewise must be made available to the breaching tenant during any period the landlord seeks to recover rent as it becomes due.
  The relevance of this law, however, is unclear here, where the parties agree both that the Property was surrendered and that the Lease does not call for acceleration of rent.

Such landlord is at a distinct disadvantage if, as here, its tenant breaches the lease prior to the termination of the contract.

### 3. Calculation of Damages under the Lease between Robshe and the Debtor

The five (5) year Lease entered by Robshe and the Debtor, terminating on August 31, 2022, provides for an annual increase of rent and that the rent must be paid by the fifth of the month.

Therefore, under Pennsylvania law and the terms of the Lease, and considering the uncontested fact that the Property was surrendered at the end of June, 2021, Robshe's damages may be calculated as follows:

- Unpaid prepetition rent, including the Judgment: $43,725.86 (this amount is agreed on by the parties, see Debtor's Mem. at 2); plus

- The allowed priority claim of $2,438.71 for "stub rent" for the relevant portion of rent from December 2020 (following the bankruptcy filing); plus

- Postpetition rent due from January through June 2021 minus the two (2) months (May and June, 2021) rent paid by the Debtor: $12,320.00,[6] equals:

- $58,484.57 (the "Lease Damages").

### B. Step Two: Does the Rent Cap Affect and or Limit the Amount of State Court Damages?

The next, determinative, question is whether the Rent Cap succeeds in lowering the Lease Damages.

---

[6] This amount, which includes interest on the rent owed, was allowed by the Administrative Claim Order.
  I note that the analysis would be the same even if the two (2) months of rent already paid by the Debtor were included in the calculation.

As discussed, the Rent Cap merely serves to limit the amount of damages that a landlord could otherwise claim; the Cap is a ceiling and not a floor (it is, after all, called a "cap"). Therefore, the provision only comes into play if the Lease Damages are greater than the amount calculated under §502(b)(6).

They are not.

Here, the Rent Cap may be calculated as follows:

- Unpaid prepetition rent, including the Judgment: $43,725.86; plus
- Postpetition rent due December 2020 (the date of filing) for one year: $33,900.00[7]

equals:

- $77,625.86 (the "Rent Cap Calculation").[8]

Because the Rent Cap Calculation is more than the Lease Damages, the Rent Cap neither limits nor affects the actual damages. In re Gantos, Inc., 176 B.R. 793, 795 (Bankr. W.D. Mich. 1995); In re Fin. News Network, Inc., 149 B.R. 348, 351 (Bankr. S.D.N.Y. 1993).

In other words, under circumstances such as these, in which the contractual damages are already less than those that would be determined under §502(b)(6), the Rent Cap is not an applicable provision. In re Iron-Oak Supply Corp., 169 B.R. 414, 419 (Bankr. E.D. Cal. 1994).

### C. Robshe's Argument Does not Prevail

With this conclusion in mind, I turn to Robshe's counterpoints.

Robshe does not contest the amount of damages due pursuant to state law. Rather, the landlord's argument that the Rent Cap permits it to receive the amount stated in the Proof of

---

[7] The rent, per the Lease, was $2,800.00 per month through September 1, 2021, when it rose to $2,900.00 per month.

[8] This is the appropriate Rent Cap figure because it is greater than the alternative calculation of 15% of the rent due for the remaining term of the Lease. See MDC Sys., Inc., 488 B.R. at 83

11

Claim focuses on the wording of the Rent Cap. Specifically, Robshe asserts that the fact that section 502(b)(6) employs a formula that includes "the <u>rent reserved</u> by [a] lease, <u>without acceleration</u>, for the greater of one year, or 15 percent, not to exceed three years . . . ." means that a landlord is entitled to post-petition damages through a period of at least a year (the exact time frame and amount depending on when the petition was filed and whether the property has been surrendered). 11 U.S.C. §502(b)(6) (emphasis added).

The term "rent reserved" is indeed a calculation of future rent provided for in a lease agreement. <u>In re McSheridan</u>, 184 B.R. 91, 98-100 (B.A.P. 9th Cir. 1995), <u>overruled on other grounds by</u> <u>In re El Toro Materials Co., Inc.</u>, 504 F.3d 978, 981-82 (9th Cir. 2007) (setting out a three (3) part test to determine what qualifies as "rent reserved" pursuant to the Rent Cap). However, this reading only amounts to a conclusion that the rent specified for the remaining duration of a lease would be included to calculate the rent cap amount rather than the amount of damages to which Robshe is entitled. The Rent Cap is based on the amount of reserved rent called for by the provisions of the lease; the calculation is not, as Robshe concludes, a guaranty of damages to which a landlord who suffered a breach is *separately entitled*. <u>In re Shane Co.</u>, 464 B.R. 32, 38 (Bankr. D. Colo. 2012).

Robshe also misinterprets the Rent Cap's language that the limit will be determined "without acceleration" to mean that "rent reserved" necessarily includes one (1) year of rent even in a lease without an acceleration clause. Mem. at 4. However, the term "without acceleration" means "simply that reserved rent is to be calculated without application of any acceleration clause." <u>In re Allegheny Int'l, Inc.</u>, 145 B.R. 823, 827 (W.D. Pa. 1992). Therefore, the terms of

the underlying lease – and the presence or absence of an acceleration clause in such lease - does not affect the Rent Cap calculation.[9]

### D. Note About Final Determination of Proof of Claim

The Debtor's argument (see Mem. at 3) that application of the Rent Cap would allow a double recovery to Robshe is unavailing; the Rent Cap, which does not apply here, is not a damages provision and therefore is not a tool for calculating a landlord's loss.

However, in this case, allowance of the Proof of Claim as stated would provide Robshe with a duplicate claim – a double recovery of *actual damages*. Proof of Claim Number 2, to which the Debtor has not objected, states a $12,320.00 priority administrative claim for rent due from January 2021 through April 2021 and specifically allowed by the Administrative Claim Order.[10] Because that identical, duplicate amount is also requested in Claim 3, I will reduce the Proof of Claim by that amount. In re North Bay Gen. Hosp., Inc., 404 B.R. 443, 466 (Bankr. S.D. Tex. 2009) (duplicate claims not allowed); In re Marino, 201 B.R. 234, 243 (Bankr. N.D. Ill. 1996) (same).[11]

Therefore, the Proof of Claim will be allowed in the amount of $43,725.86, which represents the agreed pre-petition amount owed due to the Debtor's breach of the Lease. All

---

[9] The Rent Cap, as Robshe points out, does not specifically limit relief to leases which contain an acceleration clause. However, on a practical level, this case demonstrates that the Rent Cap will likely not come into play when, due to the absence of an acceleration clause, the allowed damages are already limited.

[10] Claim 2 is itself confusing. It states both a total amount of $68,375.86 for prepetition unpaid rent and "Section 502(b)(6) Rejection of Lease Claim." The Claim is listed on the Claims Register in the amount of $12,320.00 and, given that any remaining amounts are clearly a duplication of Claim 3, I will assume that Proof of Claim 2 states a priority, allowed claim for $12,320.00.

[11] Robshe's Proof of Claim Number 4 states an uncontested administrative priority claim for $2,438.71 for "stub" rent for December 2020 and is based on the Stub Rent Order. This amount has not been duplicated in the Proof of Claim.

allowed post-petition rent has either been paid by the Debtor or separately allowed as an administrative claim.

Because Robshe fails to offer any basis on which to categorize the $43,725.86 as a priority or administrative claim, the amount will be allowed as a general unsecured claim.

### VII. CONCLUSION

The Debtor's Objection to the Proof of Claim will be sustained. The allowed claim represents the sum owed to Robshe for pre-petition damages; the remainder of the stated amount has either been separately allowed, separately paid, or is derived from an incorrect application of the Rent Cap.

The conflation of a Bankruptcy Code damages cap and a state law damages calculation leads Robshe to assert that it is entitled to *more* than would be allowed under the terms of the negotiated lease. Yet the Rent Cap is not meant as such a gift to landlords.

The bottom line is that the Debtor, a small business, abandoned its premises a few months into its bankruptcy, leaving behind a not very impressive amount of unpaid rent. Because the landlord did not bargain for the inclusion of an acceleration clause, and because the Rent Cap does not succeed in altering the amount of damages owed, Robshe cannot collect past the date of surrender.

An appropriate Order will be entered.

**Date: <u>December 3, 2021</u>**

*/s/ Patricia M. Mayer*

**PATRICIA M. MAYER**
**U.S. BANKRUPTCY JUDGE**